UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FRANK HOGAN,

                            Plaintiff,

          v.                                        5:03-CV-00435(HGM/GJD)


CITY OF SYRACUSE, NEW YORK;
MATHEW DRISCOLL, Mayor, City
of Syracuse, New York, and VITO
SCISCIOLI, Director of Operations,
City of Syracuse, New York,
                            Defendants,

_____


APPEARANCES:                               OF COUNSEL:

D. JEFFERY GOSCH, ESQ.
Attorney for Plaintiff
120 East Washington Street
Suite 731
Syracuse, NY 13202

OFFICE OF THE CORPORATION COUNSEL          NANCY JEAN LARSON, ESQ.
Attorney for Defendants                    TERRI BRIGHT, ESQ.
300 City Hall
Syracuse, NY 13202

HOWARD G. MUNSON, SR.J.
_____

MEMORANDUM DECISION AND ORDER

     The Plaintiff  began this proceeding when a Notice of Claim was served upon the

Defendants on  April 11, 2002, within the period required by statute.  Thereafter, Plaintiff's

claim was served on the Defendants on February 24, 2003 and, again, on March 7, 2003.

     Plaintiff  alleges that he was wrongfully discharged for political reasons and age  from

1

his public employment with the City of Syracuse, New York, without due process in violation of certain protected rights under the First and Fourteenth Amendments of the United States Constitution, and Sections 8 and 11 of the New York State Constitution, the Civil Service Law, and other applicable Federal and State laws, rules, regulations and policies. He seeks compensatory damages.

Defendants interposed an answer to Plaintiff's Claim, and removed it to the United States District Court for the Northern District of New York. Defendants amended their answer and after discovery was completed, they filed the summary judgment that is currently before the court. Plaintiff has entered opposition to this motion and, included therein, a request to amend his claims, which Defendants have opposed. Plaintiff was employed by the City of Syracuse, ("City") in 1976, and given a position in the Department of Parks & Recreation Department ("Department"). Thereafter, he held various positions there and, ultimately, became a Deputy Commissioner of the Department in 1995.

In 1980, Plaintiff became the Commissioner of Special Events, a position within the Department of Parks. His work centered around presenting special events in City venues. Plaintiff 's duties did not give him authority to hire, fire or promote employees of the Department, and he regularly supervised 4 of the Department's 40 to 60 employees. The employees he supervised had no supervisory power of their own. He appeared at award ceremonies and similar events, meetings of a park association or a group seeking to put on a special event on behalf of the Department, but he did not attend meetings as a representative of the Commissioner of Parks.

He would prepare the Special Events portion of the Department's budget, but the final

budget responsibility was for the Commissioner. When the Commissioner was on vacation, or otherwise unavailable, he would perform the ministerial act that would permit employees to be paid.   Plaintiff did make decisions concerning  minor events, but the Commissioner or the Mayor decided whether major events should be held.   He was involved in marketing the Department's events, but all was approved by the Commissioner. As a Deputy Commissioner, Plaintiff had no direct contact with Defendant Mayor Driscoll, but he would go to meetings where the Mayor was present, along with several other people.

Plaintiff is a member of the Democratic party, and has worked under four Mayors Alexander, Young, Bernardi and Driscoll, all were Democrats except Republican Bernardi.

In the Fall of 2002's Democratic primary for Mayor of Syracuse, Plaintiff supported Joseph O'Hara, one of 4 or five candidates seeking the nomination including Defendant Driscoll. Prior to this time, Plaintiff's relationship with Defendant Driscoll had been cordial and friendly. However,  Defendant Driscoll's attitude toward him was substantially chilled when Plaintiff advised him that he would not support him in the Democratic primary election. While Plaintiff did support another candidate in the party primary,  he never advocated his cause at his work place, and never made any statements that either criticized or disagreed with the policies or agenda of Defendant Driscoll. Plaintiff supported Defendant Driscoll's polices and agenda relative to the operation of the City and his position.

On January 15, 2002, Plaintiff's employment was terminated when he received a hand delivered letter from Defendant Sciscioli.  The decision to discontinue his employment was made by Defendant Driscoll.   Although the termination letter referred to other reasons, at his deposition , Defendant Driscoll stated that the only reason he was removed was that "I didn't like

him , and never have liked him." (Driscoll Deposition, tab J, p. 43, 2-10, p. 45, 18-21).

Defendant Driscoll acknowledged he did not know of any policies of his administration that Plaintiff disagreed with or failed to carry out, and had no reason to believe that he would not have continued to carry out the City's policies regarding the Department, nor did he have any knowledge that Plaintiff ever disagreed with City or Departmental policies. (Driscoll Deposition., tab j, p. 48, 17-25, p. 49, 1-4). Defendant Sciscioli's testimony was consistent with Defendant Driscoll's. (Sciscioli Deposition, tab 1, p. 29, 14-19).

Defendant Driscoll appointed his second cousin, Patrick Driscoll, to be Deputy Commissioner of the Department shortly after Plaintiff's dismissal, and was, subsequently, made Commissioner of the Department. Patrick Driscoll is considerably younger that Plaintiff.

Under Fed.R.Civ.P. 56©, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if he or she can point to an absence of evidence to support an essential element of the nonmoving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ( "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party"). When deciding a

motion for summary judgment, " 'the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.' " <u>Matsushita Electric Industries  Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ( quoting <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed.2d 176 (1962)). However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading." Fed.R.Civ.P. 56(e).

The court  first finds that the Plaintiff's age discrimination claim alluded to in  page 24 of his 50h deposition testimony of July 16, 2002, has been abandoned.  This claim was addressed in Defendant's memorandum of law at III p. 21-22, but has gone unaddressed in Plaintiff's response.  When a party fails to address one of the moving party's grounds for summary judgment, the court may deem the claim abandoned and grant summary judgment in favor of the moving party on that ground.  <u>Taylor v. City of New York</u>, 269 F. Supp.2d 68, 75 (E.D.N.Y. 2003).  Therefore, summary judgment is granted on this and claim, and it is dismissed.

Plaintiff was dismissed as a public employee on January 15, 2002.  On April 1, 2002 he filed a Notice of Claim within the four month period for so doing.  Subsequently, Plaintiff's claim was served on the Defendants on February 24, 2003, and served again on March 7, 2003. Defendants contend that Plaintiff's claims for reinstatement and/or back pay and benefits could only have been brought in a  Article 78  Proceeding under the New York Civil Practice Law and Rules, but he cannot do so now because the four month limitation period for bringing these claims expired long ago.

This proceeding, wherein Plaintiff seeks reinstatement of his position, back wages and benefits, was obviously brought under article 78 CPLR, and is properly before the court.

Subdivision (a) of 7804 thereof, provides that a proceeding under that article "is a special proceeding." Thereby article 4 of the enactment, which governs matters of procedure in special proceedings generally, is made applicable to a proceeding under article 78. Moreover, subdivision (c)of 103 CPLR provides that "If a court has obtained jurisdiction over the parties, a civil judicial proceeding shall not be dismissed solely because it is not brought in the proper form, but the court shall make whatever order is required for its proper prosecution." Thus, it has been written that "Under the new practice there is no . 'procedural no man's land'; all 'independent' applications are civil judicial proceedings and must be either an action or a special proceeding. CPLR 103(b), 104(d). If such an application is brought in the wrong form the defect will be corrected without dismissal. CPLR 103(c)." (1 Weinstein-Korn-Miller, N. Y. Civ. Prac., § 401.03; see, also, ibid., §§ 103.02 to 103.08 inclusive.) Matter of Nowak v. Wereszynski, 21 A.D.2d 427, 430-31, 250 N.Y.S.2d 981.

While political patronage dismissals clearly infringe on an employee's First Amendment rights to political belief and association, these rights are not absolute. Elrod v. Burns, 427 U.S. 347, 360, 96 S. Ct. 2673, 49 L. Ed.2d 547 (1976).  However, political affiliation is a valid employment criterion for jobs held by "policymaking" or "confidential" employees. Branti v. Finkel, 445 U.S. 507, 517, 100 S. Ct. 1287, 63 L. Ed.2d 574 (1980); Elrod, 427 U.S. at 367, 372, 96 S. Ct. 2673. In assessing justifications for dismissals, the Elrod Court reasoned that "[l]imiting patronage dismissals to policymaking positions is sufficient to achieve th[e] governmental end" of ensuring that new administrations, approved by the electorate, are able to effectively implement their policy agendas.  Id.  The term "policymaker" is  used as a "convenient shorthand" for a government employee who occupies a position for which party

affiliation, loyalty or confidence are appropriate.  Branti v. Finkel, 445 U.S. 507, 518, 100 S. Ct.

1287, 1294, 64 L. Ed.2d 574 (1980).

Elrod has been traditionally applied to terminations based on an employee's different

political affiliation. Members of the same party are presumed to share common interests and

goals, and patronage appointments usually come from the same party as the elected official. Hall

v. Ford, 856 F.2d 255, 263 (D.C.Cir.1988). But identical party affiliation does not necessarily

ensure the subordinate's loyal adherence to the superior's policies. Primary election fights can be

famously brutal, sometimes more so than contests in the general election, and animosity between

candidates and their supporters is likely to result. Robertson v. Fiore, 62 F.3d 596, 600 (3d

Cir.1995); Wilbur v. Mahan, 3 F.3d 214, 219 (7th Cir. 1992). Recognizing this, other courts of

appeals have broadened the definition of "political affiliation" to include commonality of

political purpose, partisan activity, and political support. Kaluczky v. City of White Plains, 57

F.3d 202, 208 (2d Cir.1995); Williams v. City of River Rouge, 909 F.2d 151, 153 n. 4 (6th

Cir.1990). These courts have upheld terminations under Elrod-Branti of policymaking employees

who openly supported campaigns against their current or subsequently elected employer.

Kaluczky, 57 F.3d at 204-05; Williams, 909 F.2d at 153-54.

Policymakers hold their office at the will of their employer, and may be discharged by

reason of political affiliations, political beliefs, ideological viewpoints or partisan activity. Thus

the First Amendment does not bar "adverse employment action" based solely on the content of

a policymaker's expressive activities or beliefs. Adverse employment actions include discharge,

demotion, refusal to hire, refusal to promote, and reprimand.  Rutan v. Republican Party of

Illinois, 497 U.S. 62, 74, 110 S. Ct. 2729, 111 L. Ed.2d 52 (1990); McCabe v. Sharrett, 12 F.3d

1558, 1563 (11th Cir.1994).  Whether a person is a policy maker is a question of law.  Gordon

v. County of Rockland, 110 F.3d 886-89 (2d Cir. 1997).

In Elrod, the Supreme Court indicated that, for some positions, political affiliation is a

permissible employment criterion. Id. at 367, 96 S. Ct. at 2686; Branti v. Finkel, 445 U.S. 507,

517-18, 100 S. Ct. 1287, 1294, 63 L. Ed.2d 574 (1980). In Rutan v. Republican Party of Illinois,

497 U.S. 62, 110 S. Ct. 2729, 111 L. Ed.2d 52 (1990), the Supreme Court summarized the

exception it had developed in Elrod and Branti:

In Elrod, we suggested that policy-making and confidential employees probably could
be dismissed on the basis of their political views. In Branti, we said that a State demonstrates a
compelling interest in infringing First Amendment rights only when it can show that party
affiliation is an appropriate requirement for the effective performance of the public office
involved.

Rutan, 497 U.S. at 71 n. 5, 110 S.Ct. at 2735 n. 5.

"We have noted that the Branti guidelines do not lend themselves to easy or automatic

application." Hawkins v. Steingut, 829 F.2d 317, 320 (2d Cir.1987); Jimenez Fuentes v. Torres

Gastambide, 807 F.2d 236, 241 (1st Cir.1986) (en banc) ("Identifying generic categories of

positions where partisan selection and rejection are permissible has ... proven to be an elusive and

intractable task."), cert. denied, 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987).

The Second Circuit examined the Elrod-Branti political dismissal exception and listed

several inquiries useful in deciding whether a policymaker position is one "calling for party

loyalty."  Regan v. Boogertman, 984 F.2d 577, 579-80 (2d Cir.1993). These factors include

whether the employee (1) is exempt from civil service protection, (2) has some technical

competence or expertise, (3) controls others, (4) is authorized to speak in the name of

policymakers, (5) is perceived as a policymaker by the public, (6) influences government

8

programs, (7) has contact with elected officials, and (8) is responsive to partisan politics and political leaders.  Vezzetti v. Pellegrini, 22 F.3d. 483,486 (2d Cir. 1994)

This is not an exhaustive list of indicators, nor is any one factor or group of them always dispositive. The proper approach is to assess all the factors in order to determine whether "there is a rational connection between shared ideology and job performance." Savage v. Gorski, 850 F.2d 64, 68 (2d Cir.1988).

With this background in mind, the court will review the record in this case, and apply the Venzetti factors to the position Plaintiff held in the Driscoll Administration:

Plaintiff had no civil service protection, and was an employee at-will. ( Def.s Ex. O, Larson Aff.)   As Deputy Commissioner, he had acquired special expertise in putting on special events within the City of Syracuse. (Def.'s Ex. L, Plf. Dep. p. 11:16-23)

Plaintiff did directly supervised four (4) of the Parks Department's  40 to 60 employees (Def.'s B, Plf. Dep. at 12:19-23), and, at special events, worked with, but did not supervise, employees of other City Departments, including the Department of Public Works; Police and Fire (Def.s Ex. B at 14:13-16; Ex. L at 14:7-13, 22: 22-23). These employees were supervised by their own personnel during special events.  Although Plaintiff did not have the authority to hire and fire employees, his recommendations for hiring were generally accepted by the Parks Commissioner. (Def. Ex. B at 11:7 -14).

Plaintiff was authorized to speak, as a representative of the Parks Department and his fellow employees therein, to the media, vendors, special events sponsors and promoters, neighborhood associations, associations, and to representatives of other governmental agencies. However, his work in all special events always required the approval of Commissioner Jennings.

His media interviews generally consisted of two questions, attendance figures and attendee satisfaction.   (Plf. s Dep. Def.'s Ex. B 8:12-25, 10: 5-11 20:1-10), (Def.'s Ex. B at 17:3-7, 17:15:21, 18:1-4, 18:17-25, 18:22-25; Ex. L at 12:16-25, 13:2-8, 15:1-9,15:10-15, 15:23-16:12, 20:6-19, 21:5-7, 26:10-20).

Plaintiff's personal overseeing of the various aspects of special events and trouble shooting problems throughout their runs, demonstrated, only, that he was carrying out the duties of his position as the event organizer.  (Def.'s Ex. L at 21:13-19, 24:17-20)

Plaintiff originated concepts for some special events that eventually materialized. (Def.'s Ex. B at 20:11, Def.s Ex. L at 18-17- 19:16)

Plaintiff had contact with Mayor Driscoll during special events meetings, and the Commissioner of Parks was usually in attendance at the same meetings. (Def.'s Ex. 18 at 17-25). As a member of the same political party as Mayor Driscoll, Plaintiff was responsive, but not always, to partisan politics.

In determining whether Plaintiff was a policymaker it is important to not confuse the making or advising on matters of policy with either discretion or supervision. Discretion often is exercised not only by policymaking officials but also by workers all the way down the chain of command to the bottom-most layer. Senior government employees may exercise significant discretion, but it is discretion regarding how best to implement the policies formulated by their political superiors, and so it does not make them policymakers. Nor does Plaintiff's job title of Deputy Parks make him a policymaker.

The standard  management  hierarchy, whether in a government agency or in a private firm, operates on the basis of "management by exception."  Fuerst v. Clarke, 454 F.3d 770, 772

(7th Cir. 2006)(citations omitted). The workers on the bottom rung use their discretion to decide matters that deviate only slightly from the completely routine matters that they are trained and experienced in handling. If they encounter a significant deviation from the norm, they bounce the issue up to their supervisor, who has broader authority, and so on up. The issue can rise through many levels before its resolution requires the formulation of policy rather than merely a technical judgment.  This is evident, here, by Plaintiff's acknowledgment, that every event required the approval of its scope, content and presentation arrangements by Commissioner Jennings.

Generally, an at-will public employee like Plaintiff,  could be hired and fired for any or no reason, except  for exercising  First Amendment rights, including the right to freedom of free speech, association and backing the political candidate of his choice. Elrod.  After examining the Vezzetti factors, the court finds that Plaintiff's  special events labors in  his Parks Department employment, did not make him a policymaker subject to that position's exception to First Amendment  protection as Defendants' contend.

Plaintiff maintains that he has a right to a hearing  before being terminated.  Where the state affords plaintiff, subsequent to his termination, a full adversarial hearing before a neutral adjudicator, due process is satisfied.   New York afforded Plaintiff such a hearing via an Article 78 proceeding York State Supreme Court.   An Article 78 proceeding permits a petitioner to submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims. Gudema v. County of Nassau, 163 F.3d 717,724 (2d Cir. 1998). An Article 78 proceeding therefore constitutes a wholly adequate post-deprivation hearing for due process purposes. Hellenic American Neighborhood Action Committee v. The City of New York, 101 F.3d 877, 881. No reason exists to depart from the

11

general presumption that a judicial trial represents the epitome of full process. <u>Campo v. New York City Employees' Retirement Systems</u>, 843 F.2d 96, 100-01, 103 (2d Cir.1988) ("<u>Parratt</u> teaches that a state may provide procedural due process in either an administrative or a judicial setting.").

Defendants claim that they should be entitled to qualified immunity for Mayor Driscoll's termination of Plaintiff's employment, and the complaint should be dismissed. The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed.2d 396 (1982)<u>; Anderson v. Creighton</u>, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038, 97 L. Ed.2d 523 (1987).

"If qualified immunity can be determined as a matter of law, we can hear the appeal. If resolution of the immunity defense depends upon disputed factual issues, or upon mixed questions of fact and law, an immediate appeal will not lie, and review of the qualified immunity determination will have to await the district court's resolution of the factual questions." <u>DiMarco v. Rome Hosp. & Murphy Memorial Hosp.</u>, 952 F.2d 661, 665 (2d Cir.1992)<u>; Soares v. State of Conn.</u>, 8 F.3d 917, 920 (2d Cir.1993) (appellate jurisdiction limited to circumstances "where the qualified immunity defense may be established as a matter of law or where the district court has committed a fundamental error in applying the law").  In the case at bar, the implementation of a qualified immunity defense is a question of fact, which cannot be resolved in the current proceeding.

Plaintiff contends that Section 5-102 of Syracuse City Charter provides that only

12

department heads can remove employees in their respective offices, therefore, the mayor's order

dismissing  Plaintiff was unlawful. Defendants point out that Section 5-102 of the City Charter

provides that: "Except for the department of audit, the heads of all departments and members  of

all boards and commissions shall be appointed by the mayor," and, if the mayor can appoint

department heads, he certainly can dismiss them, as well as the deputy commissioners.  While it

is true that a department head  can remove  all officers and employees in their respective offices,

Charter Section 5-104 (1), and it might be  logical to assume that the mayor, as the city's chief

executive, has the inherent power to terminate any city employee's tenure, logic is not proof.  The

parties here have produced portions of the City Charter that they each claim proves their

contentions, but these Charter portions do not state specifically what City workers can or cannot

be removed by the mayor, thus, this is another fact question which can not be decided in this

proceeding.

Accordingly, Plaintiff's motion to amend the complaint is DENIED; Plaintiff's age

discrimination claim is DENIED and dismissed as abandoned, Defendants' motion for summary

judgment is DENIED.

**IT IS SO ORDERED**

Dated:  March  30,  2007
          Syracuse, New York



_Howard G. Munson_
Howard G. Munson
Senior  U.S. District Judge

13